SAMUEL A. DANES and MARIA E. DANES, Respondents, Appellants, *v.* THE STATE OF NEW YORK, Appellant, Respondent.

Third Department, September 15, 1915.

Eminent domain — appropriation of property for barge canal — damages — waters and watercourses — title to bed of Mohawk river — conveyance by Queen of England.

Where a correct measure of damages has been adopted by commissioners for lands taken for public use, an appellate court will not interfere with the award, unless the amount is clearly unjust and inadequate.

An award of damages for lands and the water rights appurtenant thereto, appropriated under the Barge Canal Act, examined and approved.

A grant of land adjoining the Mohawk river, made in 1708 by the Queen of England to a private owner under the common law of England, conveyed title to the bed of the river to the thread thereof, notwithstanding subsequent acts of the State Legislature, which, under the Constitution of 1777, apply only to the bed of the Mohawk river opposite Dutch grants, and to that part of the river never conveyed by any authority.

SMITH, P. J., and LYON, J., dissented.

CROSS-APPEALS by the claimants, Samuel A. Danes and another, and the defendant, State of New York, from a judgment and determination of the Board of Claims of the State of New York in favor of the claimants, entered in the office of the clerk of said Board on the 22d day of September, 1914.

The judgment was for the sum of $9,050, with interest, and was for real property belonging to the claimants, situated on the Mohawk river in the town of Niskayuna, Schenectady county, appropriated by the State for barge canal purposes.

*Egburt E. Woodbury,* Attorney-General [*J. P. Coughlin* of counsel], for the appellant, respondent.

*De Witt W. Ostrander,* for the claimants, respondents, appellants.

HOWARD, J.:

The claimants owned a strip of land bordering on the Mohawk river in Schenectady county, in proximity to the city of Schenectady. On these lands were a farmhouse and outbuildings, a well, an apple orchard and a few cherry trees. In

1902 that portion of the farm bordering on the Mohawk was laid out into building lots. Prior to the appropriation of these lands by the State many of these building lots had been sold. The formation of the river bed at that point is such that there was a fall or head of four and one-half feet between the upper and lower bounds of the property taken, so that an undeveloped water power of some capacity existed there. This power could have been developed by means of a wing dam or in conjunction with certain other rights owned by the claimants.

This property has been appropriated by the State under the authority of the Barge Canal Act (Laws of 1903, chap. 147, as amd.), and the Board of Claims has awarded the claimants $8,050 for the lands and buildings taken and $1,000 for riparian rights. The claimants have appealed from the award because of inadequacy — inadequacy as to the lands and buildings taken, and particularly as to the riparian rights appropriated.

A careful examination of this voluminous record leads us to the conclusion that the awards were adequate, fair and reasonable. There can be no doubt as to the award for lands and buildings taken. They were tangible and could be seen and their value quite accurately estimated. The allowance of $8,050 seems to us fully adequate. As to the value of the riparian rights, that was wholly a matter of opinion. There was some fall (four and a half feet) in the river opposite the lands of the claimants, but the water power was entirely undeveloped, and as to whether it could have been profitably developed was problematic. The award of $1,000 to the claimants for all rights growing out of their ownership in the bed of the Mohawk river was, we believe, under the proof, ample and complete.

Where a correct measure of damages has been adopted by the commission an appellate court will not interfere with the award unless the amount awarded is palpably unjust and inadequate. (*City of Syracuse* v. *Stacey, No. 1*, 45 App. Div. 249; *Matter of Chapin*, 84 Hun, 490.) In the latter case the court said: "The commissioners viewed the premises and arrived at their conclusions from such inspection as well as from the statements of witnesses. There was no refusal on the part of the

commission to hear all the testimony brought forward by the appellants, and, so far as appears, it was duly considered. It is impossible for the court to say that the award is not adequate. The practice is too well settled by a long line of decisions that the court will not interfere and set aside a report of such a commission except for some error of law, or upon proof of fraud or such glaring imperfection in the report, either of inadequacy or excessiveness as shocks common sense and implies bias, prejudice, misconduct or want of judgment on the part of the commission."

The State appeals from each and every part of the award, but it only contends against the award of $1,000 for riparian rights. Did the claimants have any ownership or rights in the bed of the Mohawk river? That is the question which the appeal of the State presents for determination. One would expect to find that this question had been long ago settled and put to rest, but it seems yet to be mooted.

Queen Anne of England by her patent first granted this property to a private owner. This occurred in 1708. In that year the British Queen granted a large tract of land, including the lands in question, to Cornelius Switz, and by various mesne conveyances the title came from the Switz patent down to these claimants. If this property were located upon any of the non-navigable fresh water rivers of the State, under the common law, the title would extend to the middle of the stream and carry ownership of the bed of the stream to the middle or thread thereof. (*Fulton L., H. & P. Co.* v. *State of New York*, 200 N. Y. 400.) Many old cases and text books might be cited to sustain this proposition, but the rule is well recognized, I apprehend. But the State contends that the Mohawk river, although not navigable in fact, has been declared, by legislative enactment and judicial decree, to be a navigable river and, therefore, not to come within that rule of the common law which takes titles to the thread of the stream. The State also asserts that the Legislature and the courts have repeatedly declared the bed of the Mohawk river to be the property of the State of New York. Many cases are cited but chief among them is *People ex rel. Loomis* v. *Canal Appraisers* (33 N. Y. 461). In the learned opinion in that case written by Judge

Third Department, September, 1915.     [Vol. 169.

Davies the whole history of this subject may be found. The doctrines of Lord Hale, the rulings of the English courts, the judicial determinations of this State, as well, also, as our legislative enactments, are all reviewed. And that case does undertake, I think, to declare the doctrine that the whole bed of the Mohawk river, where it has not been granted away by the State, remains the property of the State. But as I read that case it turned on the circumstances peculiar to itself and to the situation which then obtained at Little Falls. At all events the doctrine then declared has been shaken by modern decisions.

Previous to the occupation of New York by the English in 1664 the Dutch exercised sovereignty over the State. The unwritten law of the Dutch was the civil law. Under the civil law the title to the beds of streams did not pass to adjacent owners but were retained by the Crown. (*Canal Appraisers* v. *People*, 17 Wend. 571; *Fulton L., H. & P. Co.* v. *State of New York*, 200 N. Y. 400; *People* v. *Platt*, 17 Johns. 195, foot note on page 209.) Therefore, in the case of all Dutch grants along the Mohawk, the title to the bed of the river did not pass to the grantee but was retained in the Crown; hence upon the surrender of the Dutch and the accession of the English to the sovereignty of the State, the title of the Dutch to the entire bed of the Mohawk passed to the English sovereign. From this fact arises the notion, I apprehend, that having succeeded to the title held by the Crown of England, the State of New York also holds complete title to the bed of the Mohawk. A person holding title under a Dutch grant would, of course, hold no title to the bed of the river; neither would his successors; but the Crown of England having taken title to the bed of the Mohawk, could, of course, grant title. Whatever title was granted away, therefore, by the British Crown prior to the Revolution, could not have descended to the State of New York by virtue of the Revolution. Queen Anne did, in 1708, grant these lands in question bordering on the Mohawk to Switz. She did not specifically grant the bed of the river to Switz; but in 1708 the common law of England was the law of New York. Its rules controlled this grant absolutely. No other law operated upon the grant. Therefore, we must construe the patent as it was affected by the common law. In

whatever degree that law limited or extended the words of the patent, so the grant must stand to-day. Had Queen Anne in her patent to Switz said: "And I hereby grant to Cornelius Switz the land under the waters of Canistigione (Mohawk) River opposite the lands herein granted; that is to say, I hereby grant to him the bed of said river to the thread thereof," — had this language been used, there could be no doubt that the grant would have conveyed the bed of the stream. But the common law stepped in and effected the same result as this specific language would have effected. Had this question arisen prior to the Revolution it cannot be doubted that Switz, under the common law, would have been declared to be the owner of the bed of the Mohawk to the middle of the stream.

The acts of the Legislature of 1786, 1792 and 1815 (Laws of 1786, chap. 67; Laws of 1792, chap. 40, as amd. by Laws of 1792-3, chap. 8; Laws of 1815, chap. 199), referred to in the *Loomis Case* (33 N. Y. 461), could not have impaired or affected in any manner the Switz grant in this case, the same having been made in 1708, when the monarch of England was supreme, and long before New York became a State or had a Legislature. Indeed in the first Constitution of the State of New York (1777) the People carefully guarded against this danger, for in section 36 it is declared: " AND BE IT FURTHER ORDAINED, That all grants of land within this State, made by the king of Great Britain, or persons acting under his authority, after the fourteenth day of October, one thousand seven hundred and seventy-five, shall be null and void; but that nothing in this Constitution contained, shall be construed to affect any grants of land, within this State, made by the authority of the said king or his predecessors, or to annul any charters to bodies politic, by him or them, or any of them, made prior to that day." Any declaration of the Legislature, therefore, that lands granted by the British King or his predecessors prior to 1775, were the property of the State, was contrary to the Constitution and wholly nugatory and void. In the face of the constitutional prohibition, the Legislature surely could not have intended to abrogate this solemn grant made by the British Crown; and, therefore, the legislative declaration

must be held only to apply, and was, it seems to me, intended only to apply, to the bed of the Mohawk opposite Dutch grants, and, of course, also to that part of the river bed never granted away by any authority.  We have not undertaken to reason this out altogether *de novo*, but have relied upon *Lewis* v. *City of Utica* (159 App. Div. 160).  That case deals with the exact question presented here; and we feel inclined to follow it, not only because it is a precedent, but because we fully concur with the reasoning of the learned justice who wrote the opinion.

The decision of the Board of Claims should be affirmed.

All concurred, except SMITH, P. J., and LYON, J., dissenting.

Determination affirmed, with costs.