WATERVLIET HYDRAULIC COMPANY, Respondent, *v.* THE STATE OF NEW YORK, Appellant.

Third Department, March 7, 1917.

Waters and watercourses — respective rights of State and private persons in non-navigable inland waters — water companies not authorized to acquire title to public waters as against State — statutes construed — right of State to devote public waters to canal purposes although used by private corporation — eminent domain — assessment of damages.

If the State does not own the bed of an inland river, which is not a territorial boundary and where the tide does not ebb and flow, a riparian owner may build and maintain a dam for the purpose of developing water power, and, should the water power be destroyed by the State through the construction of the Barge canal, the State is liable to the riparian owner.

But if the title to the bed of such river is in the State it cannot be held liable in damages for removing a dam erected by a riparian owner when the State makes use of the bed of the river and the waters flowing over it for the purposes of the Barge canal.

Moreover, and without regard to the ownership of the bed of such river, if a rift in the river makes it practicable for a riparian owner to use the waters for power purposes without a dam and the State destroys such

head of water by the construction of the canal it is responsible to the riparian owner.

Section 3 of chapter 737 of the Laws of 1873, which empowers water works companies to occupy waters of the State and provides that such companies shall have no power to take or use water from any of the State canals, reservoirs or streams which have been taken by the State for the purpose of supplying the canals with water, does not authorize water companies to appropriate public waters so that they shall become owners thereof as against the State, nor does it entitle them to compensation if the State subsequently devotes such waters to a public purpose. Such company cannot deprive the State of its proprietary or sovereign rights in navigable rivers; it must acquire such right and title aside from the act aforesaid.

The fact that the Watervliet Hydraulic Company since 1876 has maintained without objection by the State a dam in the Mohawk river for the purpose of supplying a city with water gives it no prescriptive rights as against the State so as to prevent the State from using said waters as part of the Barge canal.

Where said water company claims damages for the appropriation by the State of the bed and waters of the Mohawk river for canal purposes, it is error for the Board of Claims to compute the claimant's damages on the amount expended by it for coal to develop steam power to make up a deficit in the water power developed where it appears that before the construction of the Barge canal the water company had installed and used auxiliary steam power.

APPEAL by the defendant, the State of New York, from an order and determination of the Board of Claims in favor of the claimant, entered in the office of the clerk of said board on the 22d day of April, 1915.

*Egburt E. Woodbury, Attorney-General [Edmund H. Lewis, Joseph P. Coughlin* and *Carey D. Davie,* deputies, of counsel], for the appellant.

*Eugene McLean [John T. Norton* of counsel], and *Charles E. Hotchkiss,* for the receiver of the respondent.

KELLOGG, P. J.:

At Dunsbach Ferry, near the city of Watervliet, the plaintiff, the shore owner and its predecessors, had maintained a dam across the Mohawk river since about 1876, and had used the water therefrom for power purposes in supplying the city with water. On July 26, 1911, the State, for the purposes of the Barge canal, appropriated part of the real estate on either

side of the river, and any rights claimant may have in the waters at said dam, and has made the river a part of the Barge canal, with the result that the surface of the water at that point will be several feet higher than the crest of the old dam, so that if the waters could be taken from the canal for power purposes, and could then escape through a tailrace, the plaintiff would perhaps suffer no detriment from the loss of the dam. It does not appear from the evidence whether such a tailrace can be constructed, or whether the use of the waters from the canal could be made available for power purposes to the plaintiff. The State filed a supplemental map and notice of appropriation, purporting to save to the plaintiff the right to use the water from the canal under certain conditions. We may infer perhaps, from the fact of such amended map and notice, that such use might be practicable, but the evidence gives us no light upon that subject. It would seem that both the State and the plaintiff should use reasonable efforts to minimize the damages, if any, caused by the appropriation, and that an award of damages should not be made until the facts bearing upon that question are made to appear.

By the determination the plaintiff is allowed $14,352.83, the propriety of which is not questioned upon this appeal. It is also allowed $139,361 for the destruction of the plaintiff's water power, the allowance of which furnishes the only question for consideration here.

We are considering the rights of the State and the shore owner in an inland fresh-water stream, not being a territorial boundary, and in which the tide does not ebb and flow. The rights of the parties to such waters, and the land under them, are well explained in *Fulton Light, H. & P. Co.* v. *State of New York* (200 N. Y. 400).

It is not entirely clear that the title to the bed of the stream at this place was in the State. Where the title rested would depend upon the time and the nature of the grant. (*Danes* v. *State of New York,* 169 App. Div. 443; *Matter of City of Amsterdam* v. *Carpenter Co.,* 170 id. 938; *Williams* v. *City of Utica,* 217 N. Y. 162.)

If the State did not own the bed of the river, clearly the hydraulic company, the shore owner, had the right to build and

maintain its dam, and for the destruction of its power the State is liable. Upon the other hand, if the title to the bed of the river was in the State, it cannot be held liable for damages in removing the dam which obstructed the proper use which the State sought to make of the bed of the river and the waters flowing over it. Without regard to the ownership of the bed of the river, if at this rift it was practicable to use the waters for power purposes without a dam, and the State has destroyed the head which otherwise might be obtained, it is responsible to the owner therefor.

The record is a large one. The briefs do not point out any evidence relating to the title to the bed of the Mohawk river at the place in question. While it appears that the river at this place runs through a so-called rift, making a favorable place for a dam, we cannot say from the evidence whether any water power could be developed without a dam across the river, or whether it is practicable to take waters from the canal for the plaintiff's power purposes.

The question whether the plaintiff is entitled to damages for loss of its power has been placed principally upon the effect of chapter 737 of the Laws of 1873. That statute authorizes the formation of water works companies, and section 3 is a grant of power to such companies as follows: " § 3. Said corporation shall have power to take and hold real estate for the purpose of their corporation, and may have, hold and occupy any of the waters of this State; provided, however, that nothing herein contained shall be deemed to infringe upon any private right which shall not have been the subject of an agreement and lease or purchase by said corporation. Provided, that said companies shall have no power to take or use water from any of the canals of this State or any canal reservoirs as feeders or any streams which have been taken by the State for the purpose of supplying the canals with waters."

This section does not grant to the companies when formed the right to enter upon, take and use any public waters, so that as against the State they shall be the owners, or shall have such an interest in the waters that if the State wishes to use them for a public purpose it must recompense the companies, on the theory that it is taking their property by virtue

of its power of eminent domain. The section grants to the company (1) the power to take and hold real estate; (2) to take, occupy and hold any of the waters of the State, but in order to hold real estate it must acquire a right to it aside from the act, and in order to have and hold waters it is necessary for it to acquire a right to such waters. It cannot, at will, without compensation, take waters and deprive the shore proprietors of the use and enjoyment thereof, nor deprive the State of its proprietary or sovereign rights in navigable rivers. (*Niagara County I. & W. S. Co.* v. *College Heights L. Co.*, 111 App. Div. 770.)

The fact that the plaintiff and its predecessors have maintained a dam at this point since about 1876 without any objection being raised thereto by the State until the present appropriation was made, does not give the plaintiff a prescriptive right as against the State to interfere with the use by the public of the river in the manner now sought to be made of it. (*Burbank* v. *Fay*, 65 N. Y. 57; *Rodee* v. *City of Ogdensburg*, 165 App. Div. 657, 658.)

It appears that the company was never prosperous from its outset, and that in the last few years its business was increasing. In 1906–1907 it installed steam power to help out in part the water power to enable it to give proper service. We are not satisfied with the explanation given by the claimant for putting in the steam power. It claims that it needed more power, and, as the Barge Canal Act had been passed (Laws of 1903, chap. 147, as amd.), it realized that in the end its water power must go, and for that reason it chose to put in the steam power rather than to make additions to the water power. We are satisfied that was not the reason, and that the steam power was added to make more efficient the water power and to make the service better in high and low water and at other times. The damages to the plaintiff have been computed upon the basis of the total cost of coal necessary to run by steam over and above the cost of running by water, when as a matter of fact, since 1907 the plant, up to the time of the actual taking in 1912, had been operated in part by steam, and coal bills of considerable amount had been incurred on that account. The damages represent the entire

coal cost, and cost of the extra help, it being assumed that the maintenance of the plant would be about equal under either system, capitalized at six per cent, entirely disregarding the expenditures for coal which have been made from year to year since 1907.   The evidence shows that substantial amounts were so expended.   The pumps and machinery used in determining the cost of operating by steam were not efficient, and the operation was extravagant in the use of coal, and the figures adopted by the Board of Claims do not show what would be the cost of operating by steam with proper appliances and efficient management.   The amount of coal used was unnecessary had the machinery been adequate, and does not furnish a satisfactory basis for the computation of damages.   Without going into detail, we are satisfied that the award is so excessive that it should not be sustained.   We are also satified that the claimant has no right under the law of 1873 in these waters upon which it can predicate a claim against the State.

We are not passing upon the other questions suggested, but refer to them as matters which, from the manner in which the case was tried and presented to us, we are unable to determine, but as a new trial will probably result, those matters, or some of them, may be subjects for further consideration.   The determination is affirmed as to the $14,352.83, but is reversed as to the $139,361, and a new trial is granted the plaintiff, if it so elects, as to that, without costs to either party.

All concurred.

Determination affirmed as to the $14,352.83, but reversed as to the $139,361, and a new trial granted to the plaintiff if it so elects, as to that, without costs to either party.   The court disapproves of the following findings of fact, the 12th, 15th, 18th, 19th, 27th, 29th, 30th, 32d, 33d, 34th, 35th, 36th, 37th, 38th 39th, 40th, 41st, 42d, 43d, 44th and 46th.