WATERVLIET HYDRAULIC COMPANY and Others, Claimants, *v.*
THE STATE OF NEW YORK, Defendant.
Claim No. 10786.

Court of Claims, December, 1922.

**Claims against the state — Barge canal improvement — title to bed of
Mohawk river in state — hydraulic company no right to divert water —
rights of licensee to dams in river — state appropriating dams must
make compensation.**

For many years prior to the Barge canal improvement, claimant, a hydraulic
company incorporated under chapter 737 of the Laws of 1873, owned lands
on both sides of the Mohawk river and had constructed two dams connecting
an island in the river with the north and south shores by which means it
impounded the waters of the river, developed water power and pumped water
from the river and distributed it to a city in the neighborhood. In January,
1910, the state, pursuant to chapter 147 of the Laws of 1903, appropriated
claimant's land on the north side of the river and in July, 1911, its land in
part on the south side of the river, together with any right, title or interest the
claimant might have to the island, dams, bed or waters of the river. Claimant
filed its claim. Thereafter the state made a superseding appropriation relating
to the lands on the south side of the river, thereby intending that there should
be no appropriation of the island, bed of the river or of any water power or
water rights. Claimant amended its claim. The Board of Claims awarded
damages for certain items, including $139,361 for water power rights and
privileges appropriated and destroyed. The Appellate Division reversed the
award of $139,361 and granted a new trial. At the beginning of the trial by
this court the claim was again amended so as to make a specific claim for
damages to or total destruction of claimant's entire water supply system by
taking away any right, title and interest which the claimant had to the bed
and waters of the river. Upon the trial it was understood that evidence of
damages should be deferred until the question of liability had been determined.
At the close of the evidence upon the question of liability the attorney-general
moved to dismiss the claim upon the ground that claimant had not established
a valid claim against the state. *Held,* that the superseding appropriation by
the state was totally ineffective; that claimant did not own the bed of the
Mohawk river opposite and between its uplands nor the island in the river;
that the state as owner of the bed of the river alone had the right to divert its
waters and that claimant has no claim for water rights appropriated; that
claimant maintained its dam in the river as licensee from the state and while
the state might have destroyed these dams after notice without compensation
it chose to appropriate them in July, 1911, and must make compensation
therefor. Motion to dismiss the whole claim denied.

MOTION to dismiss a claim for lands appropriated for Barge
canal.

*Eugene McLean, John T. Norton* and *Davies, Auerbach & Cornell*
(*Harold C. McCollom,* of counsel), for Charles F. Street, as receiver
in foreclosure proceedings against Watervliet Hydraulic Company.

*John T. Norton,* for Eugene McLean, as trustee in bankruptcy of the Watervliet Hydraulic Company.

*Barrett R. Wellington,* for Frank T. Staples and Philip L. Holzer as substituted trustees under mortgage made by Edgar H. Long to H. C. Warren & Co. as trustees.

*George L. Meade,* deputy attorney-general, for the State.

SMITH, J. This is the second trial of this claim, a determination by the Board of Claims awarding to the claimant $153,713.83 having been in part affirmed and in part reversed by the Appellate Division, third department. *Watervliet Hydraulic Co. v. State of New York,* 177 App. Div. 7.

The claim was filed to obtain compensation for the value of lands appropriated by the state of New York for Barge canal purposes and for damages resulting from such appropriation. Claimant, Watervliet Hydraulic Company, hereinafter called the Hydraulic Company, is a corporation incorporated in conformity with the provisions of chapter 737 of the Laws of 1873, commonly known as the Water Companies Act. The other parties claimant are successors in interest to the rights of the Watervliet Hydraulic Company or some part thereof.

For many years prior to the Barge canal improvement the Hydraulic Company had owned shore lands along and on both sides of the Mohawk river at Dunsbach Ferry, the lands on the northerly side of the river being in the town of Half Moon, Saratoga county, N. Y., and the lands on the southerly side of the river being in the town of Colonie, Albany county, N. Y. There was an island in the river between the two parcels of shore land, the area of which was one and twenty-four one-hundredths acres, which the Hydraulic Company in its claim as filed claimed to own. The record, however, does not disclose any ownership of this island in the Hydraulic Company.

The Hydraulic Company had constructed two dams across the river connecting this island with the north and south shores, thus impounding the waters of the river which were utilized to develop water power, by means of which the Hydraulic Company pumped water from the river and distributed it to the city of Watervliet and its inhabitants.

The company's pumphouse and other buildings were situated on the lands which it owned on the southerly or Albany county side of the river.

On January 26, 1910, the state of New York, pursuant to the provisions of chapter 147 of the Laws of 1903, appropriated for Barge canal purposes all of the lands of the Hydraulic Company

located on the northerly or Saratoga county side of the river, two and sixty-two one-hundredths acres; and on July 26, 1911, it in like manner appropriated a part of the lands of the Hydraulic Company located on the southerly or Albany county side of the river, twenty-three one-hundredths acres; also " any right title or interest in all that land being an island in the river opposite the pumphouse of the Watervliet Hydraulic Company containing 1.24 acres of land be the same more or less; " also the two dam structures above mentioned; and also " any right title and interest which the said Watervliet Hydraulic Company may have to the bed or waters of the Mohawk River."

Both certificates of appropriation recited that the appropriations covered merely lands, water rights, buildings and other structures, and that all fixtures, machinery or appurtenances which might be deemed fairly removable remained the property of the owner and subject to its disposition. After these two several appropriations had been consummated, the Hydraulic Company filed this claim, claiming compensation and damages as follows:

| | |
|---|---:|
| 4.09 acres of land appropriated...................... | $25,000 |
| 2 river dams totally destroyed....................... | 100,000 |
| Pumphouse destroyed or rendered useless............. | 10,000 |
| Waterwheels destroyed or rendered useless........... | 5,000 |
| Damages to or total destruction of claimant's water power privileges, right and title of, in and to the bed and water of the Mohawk river, and increased cost of fuel and steam power thereby made necessary in place thereof.................................... | 250,000 |
| Damages for cost of necessary alterations, changes, and removal of buildings, appliances, machinery, structures rendered necessary by the state's appropriations for the Barge canal aforesaid................. | 50,000 |
| Total....................................... | $440,000 |

Subsequent to the filing of the claim the state, in form at least, on May 23, 1913, made another appropriation which purported to appropriate the Albany county parcel of lands which had been appropriated on July 26, 1911, and the buildings thereon situated. The certificate or notice of this appropriation contained, after a description of the lands appropriated, the following qualification: " Excepting from the foregoing appropriation and reserving to the Watervliet Hydraulic Company its power and right if any to have, take, divert and make use of for water supply purposes, the waters of the Mohawk river acquired pursuant to the provisions

of chapter 737 of the Laws of 1873 and acts amendatory thereof and supplementary thereto, and the right to obtain access thereto over the lands hereby appropriated in any manner which will not interfere with the maintenance or operation of the canal by the state."

This last certificate or notice of appropriation contained no mention of the island or of the dams connecting the island with the northerly and southerly shores of the river, or of the bed of the river, or of the waters thereof, except as in the reservation above quoted. It was obviously the purpose of the state officers by this last appropriation to supersede the appropriation of July 26, 1911, so that there should be no appropriation from the claimant, in terms or otherwise, of the island, of the bed of the river or of any water power or water rights.

After the so-called superseding appropriation had been made, and upon the trial of the claim before the Board of Claims, and upon claimant's application, the claim was amended by adding thereto the following allegation: " That since the filing of the claim herein, September 21st, 1911, and on or about the 28th day of May, 1913, notice of permanent appropriation of the claimant's lands for the State barge canal, together with the map accompanying the same, a copy of which is hereto annexed, was filed in the office of the Superintendent of Public Works, and in the office of the Clerk of the County of Albany, and served on the claimant, but that a long time prior thereto the State had taken possession of all the lands, property, property rights, privileges and water rights of the claimant under the two appropriations alleged in said claim, and had destroyed the dam therein mentioned and described, and had damaged, injured and destroyed the remaining property, property rights, privileges and water rights of the claimant to the amount of five hundred thousand ($500,000) dollars."

The apparent purpose and effect of this amendment was to present the contention that if the superseding appropriation of May 28, 1913, had operated to render inoperative and ineffectual the appropriation of July 26, 1911, so far as the latter purported to appropriate the island, the dams, the bed and waters of the river and the right if any to have, take, divert and make use of for water supply purposes the waters of the Mohawk river acquired pursuant to the provisions of chapter 737 of the Laws of 1873 and the acts amendatory thereof and supplementary thereto, yet the state having actually taken possession of all of the lands, property rights, privileges and water rights of the Hydraulic Company under and as described in the two first appropriations, and having actually destroyed the dams, had effectually destroyed all of the company's

property rights, privileges and water rights, which were there stated
to be of the value of $500,000, for which it must pay notwithstand-
ing it had attempted to disavow its former appropriation of those
property rights.

Neither the Board of Claims nor the Appellate Division on
appeal decided as to the effect of the so-called superseding appro-
priation of May 28, 1913. It seems, however, that it was totally
ineffective, for the state having by the appropriation of July 26,
1911, appropriated the dams and whatever right, title and interest
claimant may have had in and to the island, and also whatever
water rights the claimant may have owned, title thereto, so far
as claimant had title, had passed to the state and could not be
returned to the claimant by the attempted superseding appro-
priation. *Kahlen* v. *State of New York*, 223 N. Y. 383.

The Board of Claims disallowed all of the items of the claim
as filed and amended, except for the following items, for which
it awarded compensation and damages as follows, viz.:

| | |
|---|---:|
| Value of Saratoga county lands taken under appropriation of June 26, 1910...................... | $524 00 |
| Value of Albany county lands taken under appropriation of July 26, 1911....................... | 600 00 |
| Value of pumphouse appropriated.................. | 8,500 00 |
| Difference in value of water wheels and pump before and after the appropriation of lands and buildings.. | 3,500 00 |
| Damage to remainder of claimant's property, presumably unappropriated lands.................. | 1,228 83 |
| For water power rights and privileges appropriated and destroyed............................... | 139,361 00 |
| Total award............................. | $153,713 83 |

The Board of Claims by its decision determined that the Hydraulic
Company had no title as against the state to the island in the river;
that it never had and never acquired any title as against the
state to the bed of the river; that, because the title to the bed
of the river was in the state, claimant could not recover compensation
for the value of its dams which the state had destroyed; that by
the appropriations no rights of claimant in or to the bed of the
river had been taken or interfered with; that claimant as the owner
of lands on both sides of the river at its plant was entitled to the
use of the waters of the river and the power generated thereby
for its corporate purposes; that by virtue of the provisions of the
Water Companies Act, so called, chapter 737, Laws of 1873, claimant
was entitled to the use at its plant of the waters of the river; that

the value of this right was $139,361; that it had the right to maintain a dam in the river subject to the paramount right of the state to remove the same.

From the determination of the Board of Claims the state appealed to the Appellate Division, third department, which court affirmed the determination of the Board of Claims as to the value of the lands appropriated, the damage to the remaining lands, the value of the pumphouse, and the diminution in value of the water wheels and pumps caused by the appropriation, amounting as found by the Board of Claims to $14,352.83, but reversed the determination so far as it awarded $139,361 as compensation and damages for water power rights and privileges appropriated and destroyed, as to which it granted a new trial to claimant, if it should so elect. *Watervliet Hydraulic Co.* v. *State of New York, supra.*

Neither party appealed from the determination of the Appellate Division, but claimant elected to have a new trial of the issues as to which there had been a reversal, and that new trial has now been had, or partly had.

The Appellate Division held that the Water Companies Act, chapter 737, Laws of 1873, granted to the Hydraulic Company no right to enter upon, take and use any public waters so that as against the state it would be the owner thereof, or have such an interest in the waters that if the state wished to use them for a public purpose it must recompense the company on the theory that its property is being taken by virtue of the state's power and right of eminent domain, but that the act merely granted to the Hydraulic Company the power to take and hold real estate, and to take, occupy and hold any of the waters of the state after it had acquired such property rights from the owners thereof, including the state, by purchase or otherwise.

It was also held that the mere fact that the Hydraulic Company had since about the year 1876 maintained its dams in the river without objection thereto having been interposed by the state, gave the company no prescriptive right as against the state to continue to maintain the dams.

It was also held by the Appellate Division that the evidence was insufficient to support the conclusion of the Board of Claims that the title to the bed of the Mohawk at the location in question was in the state of New York; that where the title rested would depend upon the time and nature of the original grants, which were not in evidence before the Board of Claims.

It was also held that if the title to the bed of the river was in the state, it would not be held liable for removing the dams, while if the title to the river bed was not in the state, the Hydraulic

Company, as shore owner, had the right to build and maintain the dams, for the destruction of which the state would be liable, and that, without regard to the ownership of the bed of the river, if the physical situation and characteristics of the Hydraulic Company's shore lands and the adjacent river bed were such as to make it practicable to use the waters of the river for power purposes without a dam, and the state had destroyed the head which otherwise might have been obtained, the state would be liable to the company for the damages so sustained.

Such is the law of this case, as given us by the Appellate Division, which must control in the determination of such questions as are presented on this trial.

At the outset of this trial by an order duly granted by this court, the claim was again amended as to the statement of the particulars of the damages sought to be recovered. As so amended, such statement is as follows, viz.:

| | |
|---|---|
| 4.09 acres of land appropriated...................... | $25,000 |
| Two river dams totally destroyed..................... | 100,000 |
| Pumphouse destroyed or rendered useless............. | 10,000 |
| Water wheels destroyed or rendered useless........... | 5,000 |
| Damages to or total destruction of claimant's water power privileges, right and title of, in and to the bed and waters of the Mohawk river and increased cost of fuel and steam power thereby made necessary in place thereof; and damages to or total destruction of claimant's entire water supply system through the taking away from the claimant of any right, title and interest which at the time of the appropriation above referred to in folios 8 to 15 hereof, the Watervliet Hydraulic Company had to the bed and waters of the Mohawk river, said appropriation covering lands, water rights, buildings and other structures — it being claimed that said appropriation took away not only the right of the Watervliet Hydraulic Company to use the bed and waters of the Mohawk river for water power, but also the right to use said waters for water supply purposes.... | 500,000 |

The only new feature of this amendment is the specific claim for damages to or total destruction of claimant's entire water supply system through the taking away from claimant of any right, title and interest which at the time of the appropriations referred to in the claim the Hydraulic Company had to the bed and waters of the Mohawk river.

Court of Claims, December, 1922.            [Vol. 119

Upon this trial it was understood and agreed by the parties that the presentation of evidence as to the amount of damage should be deferred until all of the evidence of both parties tending to establish or to disprove liability had been produced and the question of liability had been determined by this court, after which, if this court held the state liable, evidence of the amount of damages would be produced. It is plain that if the state is liable at all because of features of the claim not settled by the former trial and appeal, claimants have suffered substantial damage.

At the close of all of the evidence bearing upon the question of liability, the attorney-general moved to dismiss the claim upon the ground that upon all of the evidence claimant has not established a valid claim against the state.

In deciding this motion we are not forced to decide questions of fact upon conflicting evidence. The conclusion we have reached is based upon the undisputed facts as revealed by the evidence.

At the time of the appropriation by the state the Hydraulic Company did not own the bed of the Mohawk river opposite and between its uplands, nor the island in the river. No conveyance purporting to convey the island to claimants or any of their predecessors has been introduced in evidence, and the bed of the river was and is ungranted lands, the title to which is and always has been in the state of New York.

Neither the De Hass patent, embracing the uplands on the Albany county side of the river, nor the Van Schaick, or Clifton Park patents, embracing the uplands on the Saratoga county side, described in express terms as a part of the lands granted, any part of the river bed, or included such bed within the outward boundaries of the tracts thereby granted and conveyed. In each case the river was made the boundary of the tract granted, without any words indicating an intention to include any part of the river bed.

In these circumstances, no part of the bed of the river passed by those grants. This is so, not because of any general rule or principle applicable to non-tidal rivers, whether navigable or non-navigable in fact, in whole or in part, but because the law of New York as a colony and as a state has consistently declared, through legislation and judical decisions, that the rule that the owner of the contiguous bank of a non-tidal navigable river owns to its center is not, for certain exceptional reasons, applicable to the Mohawk river, and parts of the Hudson river. *People ex rel. Loomis* v. *Canal Appraisers,* 33 N. Y. 461; *Danes* v. *State of New York,* 219 id. 67; *Waterford E. L., H. & P. Co.* v. *State of New York,* 117 Misc. Rep. 480.

Furthermore, the conveyance to claimants and their predecessors

in title of its shore lands on the south side of the river, all fix the boundary on the river side at or inland from the low-water mark of the river.   The first conveyance of the north shore lands which purports to convey the bed of the river, or any part thereof, is a deed from one Marsh to one Long dated August, 1906, which expressly specifies the low-water mark of the river as the boundary of one of the parcels of upland conveyed thereby.   This deed purports to convey the dam and " also all land under the water in and about said dam and the approaches thereto purchased by the grantor as the property of the said West Troy Water Works Company and not heretofore conveyed by him."   Marsh purchased the West Troy Water Works property at foreclosure sale in July, 1900, and an examination of the referee's deed to Marsh reveals that such deed did not purport to convey any lands under water forming part of the river bed; hence no such lands were in fact conveyed by his deed.

It follows that there can be no recovery for the value of the island or of the river bed or for water power appropriated or destroyed, based upon the right to maintain its dam or dams in and across the river, for the Appellate Division has so held in this case.   *Watervliet Hydraulic Co.* v. *State of New York, supra.*

The opinion of the Appellate Division intimates that, without regard to the ownership of the bed of the river, if the physical characteristics of the Hydraulic Company's shore lands and the adjacent river bed were such as to make it practicable to utilize the waters of the river for power purposes without a dam, the Hydraulic Company, by virtue of its shore ownership, had the right to so utilize the waters of the river, of which right it could not be deprived without compensation.

Claimant's effort on this trial to show that its shore lands were so situated, and were of such character as that they might have been utilized to advantage for power purposes without a dam has failed for the reason that the only plan which it has presented for such utilization involved the placing of a dike in the river and on the state-owned river bed, which the shore owner was without legal right to do.   By whatever technical name, whether dike or dam, the proposed structure would be properly called, its essential nature would be that of a dam to impound and divert the waters of the river, and it would not function unless, as proposed, it were constructed out into the river and on its bed.   There can, therefore, be no recovery for water power based upon such a use of claimant's lands.

As a further element of damage which claimants claim was occasioned to the Hydraulic Company by the appropriation and

Court of Claims, December, 1922.        [Vol. 119

acts of the state it is urged that the Hydraulic Company owned the right to take and divert the waters of the river and distribute the same through its mains and service pipes to its various customers, and that by the appropriation of the bed and waters of the river and of all of the company's water rights, including its rights to take and distribute the water, the value of its entire water works system and property has been destroyed.

It is claimed that the Water Companies Act, chapter 737, Laws of 1873, conferred and bestowed on it and on the West Troy Water Works Company, to whose rights it has succeeded, the right to so take and distribute the waters of the Mohawk. This proposition was denied by the Appellate Division when this claim was before it as having no foundation in law, and we are concluded thereby.

It is further claimed that even though the Water Companies Act conferred no property right to take, divert and distribute the waters of the river, such a right was an attribute of and appurtenance to the Hydraulic Company's riparian ownership.

The ordinary riparian rights appurtenant to the shore lands were appropriated with those lands and this element of value has no doubt been considered and included as a part of the value of the uplands as fixed by the Board of Claims and affirmed by the Appellate Division, and with it we are not concerned. But no allowance has been made for the appropriation or destruction of the right, if any, to take and distribute the river water.

If such a right existed it was appropriated by the appropriation of July 26, 1911, which appropriated with other property " any right, title and interest which the said Watervliet Hydraulic Company may have to the bed or waters of the Mohawk river."

The question to be determined as to this item of the claim is whether, as a riparian owner, the Hydraulic Company had, as against the state, the right to divert waters from the Mohawk, the bed of which is and was within the ownership of the state.

We have been cited to no precedent of authority in this jurisdiction holding the affirmative of that proposition, while the negative seems to be supported by abundant authority. *Gilzinger* v. *Saugerties Water Co.*, 66 Hun, 173; affd., 142 N. Y. 633; *West Point Iron Co.* v. *Reymert*, 45 id. 703; *Garwood* v. *N. Y. Cent. & Hud. R. R. R. Co.*, 83 id. 400; *N. Y. R. Co.* v. *Rothery*, 132 id. 293; *Standen* v. *New Rochelle Water Co.*, 91 Hun, 272; *Fischer* v. *Trustees, Village of Clifton Springs*, 121 N. Y. Supp. 163; affd., 140 App. Div. 918; *Gallagher* v. *Kingston Water Co.*, 25 id. 82; affd., 164 N. Y. 602; *Penrhyn Slate Co.* v. *Granville El. L. & P. Co.*, 181 id. 80.

The state is the owner of the bed of the Mohawk river and alone

has the right to divert or authorize the diversion of its waters. *People ex rel. Loomis* v. *Canal Appraisers*, 33 N. Y. 461; *Crill* v. *City of Rome*, 47 How. Pr. 398; affd. by Gen. Term, 4th Dept. (See 12 N. Y. St. Repr. 209); *Danes* v. *State of New York, supra.*

It follows that claimants have no valid claim for water rights appropriated.

We think, however, that the claimants have a valid claim for compensation for the value of the dams which were, without qualification, appropriated by the appropriation of July 26, 1911.

In maintaining its dams in the river prior to their appropriation by the state, the Hydraulic Company was not a mere trespasser. It and its predecessors had maintained these dams since about the year 1876 without any objection having been raised thereto by the state. In these circumstances it must be presumed that the state acquiesced in the maintenance of the dams, and that the same were maintained by the Hydraulic Company as licensee from the state. Such license may be inferred from the acts and conduct of the parties. 25 Cyc. 642; *Babbage* v. *Powers*, 130 N. Y. 281; *Title Guarantee & Trust Co.* v. *City of N. Y.*, 205 id. 496; *Watson* v. *Empire Engineering Corp.*, 77 Misc. Rep. 543.

While the state in the exercise of its power to improve the navigability of its navigable waters, had it elected so to proceed, might have destroyed these dams, at least after reasonable notice to the owner to remove them, without making compensation for their value or paying damages for their destruction, it has not done so, but has elected to proceed in quite a different manner. It has elected to obtain ownership of the dam structures by appropriating them in the manner provided by section 4 of chapter 147, Laws of 1903, which confers full discretion and authority to so proceed upon the state engineer, subject only to the approval of the canal board. Having appropriated the dams it was and is thereafter too late to avoid making compensation for them upon the plea that they might have been destroyed without appropriation and without compensation or damages. While not exactly decisive of this question, the reasoning of the court in *Lehigh Valley R. R. Co.* v. *Canal Board*, 204 N. Y. 471, and *Oswego & Syracuse R. R. Co.* v. *State*, 226 id. 351, is by analogy applicable to this feature of this claim.

It is no answer on this motion to urge that the dams, without the right to continue to maintain them, were of slight, if any, value. It cannot be said they were of no value. Whatever value they had the court must determine and that value must be awarded as compensation for their taking.

The motion to dismiss the whole claim, as for a nonsuit, must be denied, and the trial must be continued at a time and place to be fixed by the court.

CORWIN, J., concurs.

Ordered accordingly.