JOHN W. HASELO and Others, Respondents, v. THE STATE OF NEW YORK, Appellant.

Third Department, May 7, 1919.

**Real property — waters and watercourses — title to island in Mohawk river in vicinity of Schenectady under English grant executed in 1684.**

Provisions of a patent made by the English in 1684 examined and *held* to have conveyed to the town of Schenectady a tract of land including an island in the Mohawk river in the vicinity of Schenectady, and that claimants against the State for damages from the appropriation of said island for the purposes of the Barge canal have proven a chain of title under said grant.

APPEAL by the defendant, The State of New York, from an order and decision of the Court of Claims, entered in the office

of the clerk of said court on the 2d day of November, 1918, awarding to claimants the sum of $9,438.32.

*Charles D. Newton, Attorney-General* [*Jerome L. Cheney, First Deputy Attorney-General*, of counsel], for the appellant.

*Miller & Golden* [*John D. Miller* of counsel], for the respondents.

WOODWARD, J.:

On or about the 31st day of March, 1917, the State of New York filed its appropriation map of an island in the Mohawk river, in the vicinity of Schenectady, under the provisions of chapter 147 of the Laws of 1903, as amended, for the purposes of the Barge canal, the reputed owners of such island being the Haselo estate, or the claimants now before this court. The claimants have proceeded regularly in establishing their title to the island, the value of the same, and all of the necessary matters involved, and they have been awarded the sum of $9,438.32 for a permanent appropriation of the premises. The State of New York appeals from the judgment and now claims to be the owner of the island, which it originally assumed to belong to the claimants, by reason of the special rule governing the title to the bed of the Mohawk river. The claimants introduced in evidence a patent granted to the town of Schenectady in the year 1684, and trace their title through mesne conveyances to William Haselo, the father of such claimants, and there is some evidence in the case of possession in the father for a period of more than forty years under paper title, and estoppel is claimed. In the view which we take of the matter it will not be necessary to consider these lesser claims to title.

In 1684, at the time the patent in evidence was made, the English were in undisputed possession and exercising sovereignty in the Colony of New York. (1 Colonial Laws of New York — Historical Note.) This patent was made, not to individuals, but to a political division of the Colony, after an extinguishment of the Indian rights, as appears by the recitals, and there would be no presumption, therefore, of a reservation of anything within the limits of the grant which

were not expressly mentioned. This patent, which carried with it an obligation to pay " Yearly and every Yeare as a Quitt Rent for his Royall Highnesse use unto such Officer or Officers as shall be Appointed to receive the same att Albany forty Bushells of Good Winter Wheat on or before the twenty-fifth day of March," was of " a certaine tract or parcell of land," indicating but one tract, " beginning at the Maques [Mohawk] river by the towne of Schenectade and from thence runnes Westerly on both sides up the River to a certaine place called by the Indians Canaquarioeny being reputed three Dutch Miles or twelve English Miles and from the said towne of Schenectade downe the River one Dutch or four English Miles to a Kill or Creeke called the Ael Place and from the said Maques River into the woods South Towards Albany to the Sand Kill one Dutch Mile and as much on the other side of the River North being one Dutch Mile more," etc. In *Mohawk Bridge Co.* v. *Utica & Schenectady R. R. Co.* (6 Paige, 554) it was held, as stated in the head note, that the words " commencing at or near the city of Schenectady, and running thence on the north side of the Mohawk river," etc., in the charter of the Utica and Schenectady Railroad Company (Laws of 1833, chap. 294), authorized the railroad company to commence their railroad at some point on the north side of the river, near the city, or at some suitable point on the south side *at* or *within* the city and then to cross the river to the north side thereof, at their election; the middle of the river forming the north bounds of the city, and the court held that by reason of this language there was an implied power in the charter to construct a bridge across the Mohawk river. Accepting this use of the preposition " at," and it is often so used (5 C. J. 1423, and authorities cited in note 56), this description in the patent, " beginning at the [Mohawk] river by the towne of Schenectade," clearly conveys the idea of a line starting in the river. The primary sense of the word " by " expresses relation to place and " signifies at or near, passing, along the line of," etc. (9 C. J. 1109.) The point is " at the [Mohawk] river by the towne of Schenectade," and at the river is not at the bank, but at the river — in or within the river which runs past or by the town of Schenectady. This is not an exterior boundary, but a mere

point from which a line runs thence westerly a distance of three Dutch miles on both sides of the river. Then from the same point down the river one Dutch mile, and " from the said [Mohawk] River into the woods South Towards Albany " one Dutch mile " and as much on the other side of the River North being one Dutch Mile more." That is, there is a strip of land two Dutch miles in width and four Dutch miles in length, through the center of which runs the Mohawk river, and this is that " a certaine tract or parcell of land " which has its " beginning at the [Mohawk] river by the towne of Schenectade," and is defined by lines running in four directions from this point and maintained at equal width by the further description of the parcel. To this description is added " and all and singular the before recited tract and tracts parcell and parcells of land meadow ground and premisses with their and every of their appurtenancyes together with all and singular the houses buildings messuages tenements and heriditaments dams, rivers runnes streames ponds woods quarryes fishing hawking and fowling with all priviledges, libertyes and improvements whatsoever to the said land and premisses belonging or in any wise appertaining or accepted reputed taken or knowne as part parcell or member thereof with their and every of their appurtenances."

Obviously the description above given includes the bed of the river. The only definite point fixed is " at the [Mohawk] river by the towne of Schenectade." From this point all the measurements proceed; they run one Dutch mile north and south of this point and three Dutch miles to the west and one to the east, and the language obviously intends to point out a strip one Dutch mile on either side of this point " at the [Mohawk] river " for a distance of four Dutch miles, one Dutch mile to the eastward and three Dutch miles to the westward, just as we now describe a line as the center of a highway and make it so many feet or rods on either side of that line. A point of beginning, from which all measurements are to proceed, could not be on both sides of the river, and whether it was on one side or the other, or the center of the stream, could make no difference in so far as the question here involved is concerned, for the grant is clearly of one Dutch mile on both the north and south sides of this given

point, and this would, of course, involve the Mohawk river, which is not to exceed an English mile in width at Schenectady.

If we are right in this point, and the title of the English Sovereign passed to the town of Schenectady in 1684, then there was no title or right to pass to the State of New York surviving at the close of the Revolution, with the exception of the *jus publicum*, which is not involved in this case. (*Lewis* v. *City of Utica*, 159 App. Div. 160, 163, 164; *Williams* v. *City of Utica*, 217 N. Y. 162, 169; *Danes* v. *State of New York*, 219 id. 67, 74, 76.) In the latter case, where the land was bounded on the Mohawk river, it was held that the title did not extend to the center of the stream, but the court distinguishes *Williams* v. *City of Utica* (*supra*) by pointing out that the " basis of that decision was an express and direct original grant of the bed of the river," as we·have demonstrated to be the case in the matter now under consideration. We are of the opinion that the State of New York has no title to the island in the Mohawk river opposite the city of Schenectady, and as the claimants show a chain of title under the grant in question, it is not necessary to ask whether there is evidence of adverse possession, or whether there are any elements of estoppel. The land under the evidence belongs to the claimants, and the award of the Court of Claims should be affirmed.

The determination of the Court of Claims is affirmed, with costs.

Judgment unanimously affirmed, with costs.