WEST VIRGINIA PULP AND PAPER COMPANY OF DELAWARE, Appellant, *v.* DUNCAN W. PECK, Individually and as Superintendent of Public Works, etc., and Others, Respondents.

Third Department, November 12, 1919.

Canals — necessity for formal appropriation of State land for Barge canal — waters and watercourses — dam constructed on public stream with State's consent — canalizing stream is revocation of consent — right of State to remove flashboard from dam existing by consent of State — navigability, test of — unnavigability at one point as affecting navigability in law of whole stream — Hudson river navigable at Mechanicville — public grants to individuals construed in favor of State — policy of Colonial government not to grant bed of public stream — Colonial grant construed not to include bed of Hudson river at Mechanicville — deeds — completing description by drawing straight line from point where description ends to point of beginning — application of rule — construction of Colonial grant confirming and defining description in original grant.

The provisions of the Barge Canal Act (Laws of 1903, chap. 147), providing the manner in which property may be appropriated for the construction of the canal, does not apply to land of which the State is the owner; no appropriation by the State of land owned by it is necessary.

Where a person has built a dam in a public stream, with the consent of the State, the declaration by the Legislature in the Barge Canal Act (Laws of 1903, chap. 147) of its intention to canalize the stream at the point where the dam is located is a sufficient revocation of the previous consent to the construction of the dam.

Where a lock in the Barge canal was constructed with reference to the existing height of a dam in a stream through which the canal passed, the owner of the dam who consented and acquiesced in such use thereof cannot thereafter erect flashboards on the top of the dam to the injury of the canal, and the State through its officers may, without any liability, remove any flashboards so erected.

The true criterion of the navigability of any stream of water is the adaptability of the stream in its entirety for the purposes of transportation, and the fact that it is not navigable at a given point does not make the stream an unnavigable one in law.

The Hudson river is a navigable stream at Mechanicville.

Nothing passes in a grant by the State to private individuals except that which is expressed in unequivocal language; every intendment is to be made in favor of the State.

It was a well-known policy of the Colonial government of New York not to grant the beds of rivers, and Colonial grants of land along the Hudson will be construed not to grant the bed of the river unless the intention appears clearly to the contrary.

Where the description in a Colonial grant of land along the Hudson river describes the place of beginning at a point on the west of the river, and the river is never mentioned in the description independently of one or both of its sides, the grant will be construed as not including the river bed.

And so a grant of land " being to the north of Albany on both sides of the Hudsons River," the boundaries of which are described as beginning at a certain point on the river and then running " up both sides of the River Northerly " and thence east and west does not convey the bed of the river.

The rule in the construction of deeds that where there is a break in the boundary line in the description a straight line will be drawn from the point of beginning to the point where the description ends, is a rule of necessity applied for the purpose of giving effect to the grantor's intention, when that intention is obvious, and to prevent a nullification of the grant, but that rule has no applicability where a grant, in which a part of the boundary lines are omitted, was made for the purpose of correcting the boundary lines of a prior grant.

Where an original Colonial grant described the boundaries as beginning at a point on the west side of the Hudson river and running thence northerly on both sides of the river to a stated point and thence easterly and westerly a stated distance, and a confirmatory grant, made apparently for the purpose of supplying the deficiency in the description contained in the first grant, described the point of beginning as on the west side of the Hudson river as in the original grant and thence running westerly to a stated point, thence northerly and thence easterly across the Hudson river a stated distance and thence southerly to a point, and the description ended there, without defining a southerly boundary or crossing the river, it will not be held that the second grant passed title to the bed of the Hudson river, for the evident purpose of said grant was to fix the east and west boundaries of the original grant.

APPEAL by the plaintiff, West Virginia Pulp and Paper Company of Delaware, from a judgment of the Supreme Court

in favor of the defendants, entered in the office of the clerk of the county of Saratoga on the 6th day of September, 1918.

*Robert Frazier* [*George M. Mackellar* and *Robert Gerbracht, Jr.*, of counsel], for the appellant.

*Charles D. Newton*, Attorney-General [*Edward J. Mone* and *John D. Monroe*, Deputies Attorney-General, of counsel], for the respondents.

COCHRANE, J.:

Plaintiff is the owner of a dam seven hundred and ninety-six feet long across the Hudson river at Mechanicville. It also owns the land on both sides of the river at the termini of the dam. As originally constructed in the year 1882 the dam was sixteen feet high. In the year 1903 the Barge Canal Act was passed being chapter 147 of the Laws of that year which canalized (§ 3) the river from Waterford to Fort Edward. Notwithstanding that legislation the plaintiff in 1904 increased the height of its dam three feet. Subsequently the State in the construction of the Barge canal built lock No. 3 through the easterly end of the dam and dredged the bed of the river above and below the dam for the purposes of the canal. In doing so the State officers adopted the height of the dam at that time as the basis of construction and built the canal and lock to conform to the dam as it then existed. At about the time the canal and lock were completed, and in 1913, the plaintiff put flashboards on the dam raising it to a still greater height of two and one-half feet. These flashboards were removed by the defendants acting for and representing the State for the protection of the canal. The plaintiff thereupon instituted this action to restrain the defendants from interfering with its dam. It is found by the trial justice that by reason of the flashboards the Barge canal could not be safely navigated nor could the locks or canal structures withstand the water pressure and that they were jeopardized and their usefulness impaired. This finding is not criticised. From a judgment dismissing the complaint the plaintiff appeals.

The dam was built pursuant to chapter 406 of the Laws of 1882 which purported to authorize its construction. Chapter 683 of the Laws of 1900 was passed to legalize the erection

of the dam and purports to give the plaintiff's predecessor certain rights in respect thereto. It has been found by the trial justice that neither of these acts operated to confer title to the plaintiff or its predecessor in respect to the river or its bed. It is unnecessary to consider the effect of either of those legislative enactments because the plaintiff expressly disclaims any rights thereunder except as they may have constituted a license or permission for the construction of the dam. The position of the plaintiff is stated in its brief as follows: "The act of 1900 did not, any more than the act of 1882, confer upon the plaintiff's predecessor the right to maintain a dam. The plaintiff's predecessor in title had the right to erect and maintain the dam irrespective of any legislative permission by virtue of its ownership of the uplands and the bed of a non-tidal, non-navigable stream. * * * The plaintiff does not and has not at any time claimed the ownership of the bed of the river by virtue of either of these acts."

The plaintiff does contend, however, that even assuming the ownership of the State in the bed of the river the State could not interfere with the dam without legislative authority because it had granted its consent to the location of the dam in the river by the acts of 1882 and 1900 and that such consent has not been revoked. The Barge Canal Act (Laws of 1903, chap. 147) in section 3 specifically states: "The route of the Champlain canal as improved shall be as follows: Beginning in the Hudson river at Waterford, thence up the Hudson river canalized to near Fort Edward," etc. Here is a distinct declaration of legislative authority to use the river for canal purposes and constitutes a revocation of any license or consent theretofore granted. The act of 1903 provides in what manner property may be appropriated for the construction of the canal and the plaintiff claims that because the State did not make its survey and map and file the same and otherwise comply with the methods and procedure specified by the statute that, therefore, there has been no appropriation and the State is a trespasser. Compliance with those statutory requirements was necessary only when the State appropriated the property of others. It was unnecessary for the State

to make an appropriation of land or water which it already owned. If it owned the bed of the river and had the right to navigate the waters of the river no appropriation of the same was necessary and the declaration by the Legislature of its intention to canalize the river was a sufficient revocation of any previous consent to the location of the dam in the river. Furthermore, I think the plaintiff entirely misses the point. The defendants have not interfered with the dam as it existed when the canal was constructed but only with changes made to the dam since the construction of the canal. In the construction of the canal and the lock through the dam and in conforming such construction to the dam as it then existed the State seems to have had the consent and acquiescence of the plaintiff. There is certainly no evidence of any protest or objection. We must here assume that the method of construction and the utilization of the dam for the purposes of the canal and the adaptability of the latter to the former were mutually agreeable to the plaintiff and the State. The canal, therefore, was properly built with reference to the plaintiff's dam and assuming the canal to be on the property of the State any change in the dam detrimental to the canal was unauthorized. The question is not as to the right of the State to interfere with the dam as it existed when the canal was built but the question is as to the right of the plaintiff to so change its dam after the canal was built as to destroy it or impair its usefulness. Any question as to the liability of the State for utilizing the dam is not presented on this appeal and we refrain from expressing any opinion in reference thereto. On the record here presented we are required to assume that the plaintiff acquiesced in the use of its dam by the State and liability of the State for so doing is not now an issue. But assuming that the bed of the river was owned by the State and assuming as we must from this record that there was an acquiescence by the plaintiff in the utilization of its dam by the State for the purposes of the canal no trespass was committed by the defendants in removing the flashboards placed on the dam after the construction of the canal.

The plaintiff further contends that the State never had title to the bed of the river at the site of the dam because

of the effect of two colonial patents before New York became a State. Before considering those patents it is appropriate to consider the question of the navigability of the Hudson river at the *locus in quo* because on this question depends largely the effect of those patents as to whether or not they carried the title of the adjoining uplands to the thread of the stream in the absence of language indicating such a purpose. (*Fulton Light, Heat & Power Co.* v. *State of New York,* 200 N. Y. 400, 413; *Danes* v. *State of New York,* 219 id. 67; *People* v. *Page,* 39 App. Div. 110.) The plaintiff strenuously urges that the river at Mechanicville is not navigable. There is much judicial literature on the navigability of the Hudson above tidal influence and the Mohawk and the question I think is settled and justifies little discussion from an original standpoint. I shall, therefore, merely refer to a few cases which seem to bear with special pertinency on the situation at Mechanicville. Stillwater is less than three miles above the plaintiff's dam. Between the two places are Fonda's Rapids mentioned in the evidence. If the river is navigable at one end of the rapids it would seem to follow that it is also navigable at the other end. More than a century ago in the case of *Palmer* v. *Mulligan* (3 Caines, 307) Chief Justice KENT said: " The Hudson at Stillwater is capable of being held and enjoyed as private property, but it is, notwithstanding, to be deemed a public highway for public uses, such as that of rafting lumber, to which purpose it has heretofore been, and still is, beneficially subservient. To obstruct this and other public uses of the river, by dams, etc., would be a nuisance." In the same case it was said by SPENCER, J.: " I cannot, however, but consider it as a common highway; independent of its being navigable with small craft and rafts above the place in dispute, the Legislature have constantly considered this river as public, and common to all the citizens of the State above tide water, and above Stillwater. They have granted islands in this river at Glens Falls, and in the town of Greenwich, in Washington County." A few years later it was even held that the Batten kill, a tributary of the Hudson about twenty miles above Mechanicville and which figures prominently in the said patents, was a public highway. (*Shaw* v. *Crawford,* 10 Johns. 236.) In

*Harris* v. *Thompson* (9 Barb. 350) it was said of the river at Fort Miller, many miles above the plaintiff's dam: "The Hudson River, at the location of the dam in question, is a public river for the purposes of navigation; or, as it is termed, a public highway." The navigability of the river above the plaintiff's dam has been judicially recognized for too long a time to be now questioned. The plaintiff, however, goes further in its contention and urges that even though the river be navigable above and below the site of its dam it is not navigable at that particular place. That is much too narrow a view of the situation. A stream may be navigable in some of its stretches and not navigable in others but that is not the condition at Mechanicville. The criterion is the adaptability of the river in its entirety for the purposes of transportation in about the locality of the place in question. "In order to be navigable, it is not necessary that it should be deep enough to admit the passage of boats at all portions of the stream. (*St. Anthony Falls Water Power Company* v. *St. Paul Water Commissioners*, 168 U. S. 349; *Morgan* v. *King*, 35 N. Y. 454.)" (*Danes* v. *State of New York*, 219 N. Y. 67, 71.) It has been held that the Falls of Niagara do not qualify or distinguish in that locality the river in respect to its general character as a navigable river. (*Matter of Commissioners of State Reservation*, 37 Hun, 537.) Of the Mohawk it has been said: "That the Mohawk, at the particular place in controversy, is not in fact navigable, does not change or affect its general legal character as a navigable river and take it out of this doctrine. A river navigable in law does not change its legal character because at particular localities it is, in fact, non-navigable." (*People* v. *Page*, 39 App. Div. 110, 117.) And in *Canal Appraisers* v. *People* (17 Wend. 571) it is stated in the head note: "If, in the improvement of the navigation of a public river, the waters of a tributary stream are so much raised as to destroy a valuable mill-site situate thereon, and the stream be generally navigable, although not so at the particular locality of the mill-site, the owner is not entitled to damages within the provisions of the canal laws directing compensation to be made for private property taken for public use." I think it should be held and found as a fact without any qualification

that the river at the *locus in quo* is a navigable stream and the patents should be construed accordingly.

We turn now to a consideration of the said patents. The first was granted by Colonial Governor Dongan in the year 1684 to private individuals and conveyed land by the following description: " A Certaine Tract or Parcell of Land scituate lyeing and being to the North of Albany on both sides of Hudsons River beginning at the uppermost limitts of the land bought formerly by Goose Garretsen and Phillip Peterse Schuyler being a Creeke called Tioneen de houwe which is the Southermost Bounds of the said Lands and from thence up both sides of the River Northerly to a Creeke or Kill on the East side of the River called Tionoon de houwe the Land on said Creeke Included keeping the same Length on the West side of the River and soe Runnes East and West into the woods as farr as the Indians Right and Title to the within menconed Land afore recited as by a Certaine Writeing or Indian Deed bearing Date the 26th Day of July in the thirty fifth Yeare of his Maties Reigne 1683 Relacon being thereunto had doth more fully and at Large appeare." The " Tioneen de houwe " is Anthony's kill, a tributary of the Hudson on the westerly side at Mechanicville about 3,650 feet below the plaintiff's dam. The " Tionoon de houwe " is the Batten kill, a tributary of the Hudson on the easterly side and about twenty-two miles above Anthony's kill. The rule is well established that nothing passes in such grants as the above by implication or except such as is expressed in unequivocal language. The patentee does not by implication take the bed of the river to the exclusion of the State. Every intendment is to be made in favor of the State. (*Canal Commissioners* v. *People,* 5 Wend. 423, 463; *People* v. *Page,* 39 App. Div. 110, 118; *Langdon* v. *Mayor, etc.,* 93 N. Y. 129, 145; *People* v. *New York & Staten Island Ferry Co.,* 68 id. 71, 77; *Sage* v. *Mayor,* 154 id. 61, 81; *Dermott* v. *State,* 99 id. 101.) In the light of such rule we must construe the above description and thus construed it does not in terms or by implication convey the bed of the river. Nothing appears from the grant indicating such an intent. It is a well-known fact that the Colonial Government as a matter of policy studiously avoided granting the river bed

(*Canal Commissioners* v. *People*, 5 Wend. 423, 460), and it is extremely improbable that Governor Dongan in this instance departed from that policy to the extent of conveying twenty-two miles of river bed in a single grant to private individuals there being nothing to indicate any reason therefor. The plaintiff presses on our consideration the recent case decided by us of *Haselo* v. *State of New York* (187 App. Div. 804). There is no similarity between the two cases. In the first place it was pointed out by us that the patentee in that case being a political subdivision of the colony the rule of presumption in favor of the State does not apply. But the crucial point in that case was that the point of beginning of the description as fixed by us was in the river, and it was said: " From this point all the measurements proceed." The entire argument rested on that feature of the case. In the instant case the description clearly begins west of the river. And the river is never mentioned in the description independently of one or both of its " sides."

The other patent is known as the Queen Anne or Lord Cornbury patent and was granted in the year 1708 to the Dongan patentees or their successors and is confirmatory of the Dongan patent. The description begins " att the South side of the Mouth of a Certain Creeck on the West side of Hudsons River Comonly called by the Indians Tionoondehowe & by the Christians Anthonys Kill," and extends westerly into the woods six miles from the river, thence northerly parallel with the river to a point opposite the north side of the Batten kill and then by a straight line east to the north side of the mouth of the Batten kill and thence still further east six miles into the woods on the east side of the river, thence southerly parallel with the river and six miles distant therefrom " untill it Come Opposite to and Bear East Six Miles Distant from the North side of the Mouth of Schaackook Kill which is the Bounds of Schaackook Patent Late belonging to Henry Van Renslaer." The Schaackook kill is the Hoosick river, a tributary of the Hudson on the easterly side about 9,000 feet above the plaintiff's dam and considerably more than two miles above the mouth of Anthony's kill. The northerly boundary of this patent crosses the river. Not so the southerly boundary. There is no southerly boundary

east of the river.   Mr. Justice WHITMYER, before whom the
case was tried, reasons with much plausibility that the purpose
of this patent was to define the easterly and westerly boundaries
which in the Dongan patent were vaguely and indefinitely
located and that the omission of the southerly boundary east
of the river was intentional.  (104 Misc. Rep. 172.)  I am
in accord with his conclusion in that respect and deem it
unnecessary to repeat the argument here.  I will, however,
consider the question from another standpoint.  The plaintiff
urges that the omission was unintentional and that the omitted
boundary line should be supplied.  If we yield to this argu-
ment and attempt to supply the missing boundary we neverthe-
less meet with insuperable obstacles.  In the patent the
description terminates six miles easterly of " the North side
of the Mouth of Schaackook Kill which is the Bounds of
Schaackook Patent Late belonging to Henry Van Renslaer."
This Schaackook or Van Rensselaer patent was granted by
Governor Fletcher in the year 1698 after the Dongan patent.
It encroached upon the southerly part of the property on the
east side of the river previously granted by the Dongan patent
to the extent of more than two miles.  I quote from the
plaintiff's brief:  " The question of encroachment was settled
between the patentees under the two patents or their assigns,
by a conveyance from the Saratoga patentees to the Schaackook
patentees of a part of the southerly portion of the Saratoga
patents," the Saratoga patentees manifestly referring to the
Dongan patentees or their successors.  The Queen Anne
patent recognizes that the title south of the Schaackook kill
(Hoosick river) is in Van Rensselaer because it recites the
same as " belonging to Henry Van Renslaer."  It is obvious,
therefore, that a straight line connecting the termini of the
description in the Queen Anne patent would cross land therein
referred to as " belonging to Henry Van Renslaer."  But
the plaintiff urges further that we should connect the termini
by extending a broken line around the land of the Van
Rensselaer patent.  The straight line rule or, in this case,
the broken line rule is a rule of necessity applied for the
purpose of giving effect to the grantor's intention, when that
intention is obvious, and to prevent a nullification of the
grant.  Such rule, therefore, has no applicability here because

without it the Queen Anne patent is not a nullity but is effective to make certain the easterly and westerly boundaries of the Dongan patent and no other intent is obvious. But if we attempt to apply the rule it by no means follows that the supplied boundary should cross the river. It certainly should not do so unless we can discover that such was the intention, and as we have already seen a contrary intent must be presumed. Every reason against such an intention in respect to the Dongan patent exists likewise in respect to the Queen Anne patent. If we supply the omitted boundary as extending along the northerly boundary of the Van Rensselaer patent to the easterly side of the river and stop there we have a complete grant and a valid and effectual conveyance. Furthermore, it is impossible to determine whether this supplied broken line should cross the river at the Hoosick about 9,000 feet north of the plaintiff's dam and then follow down the westerly side of the river to the point of beginning or whether it should follow the easterly side of the river to a point opposite Anthony's kill and make its crossing there. In the former case the bed of the river at plaintiff's dam would be effectually excluded. I know of no rule which will assist the plaintiff out of its dilemma. The Queen Anne patent undoubtedly was an effective instrument for certain purposes but it clearly did not have the effect of conveying the bed of the river at the location of the plaintiff's dam.

It follows that the trial justice properly denied injunctive relief to the plaintiff and that the judgment should be affirmed, with costs. This court disapproves of any findings to the effect that the river at the location of the plaintiff's dam is not navigable and finds that the river at that place is and was navigable.

Judgment unanimously affirmed, with costs. This court disapproves of any findings to the effect that the river at the location of the plaintiff's dam is not navigable, and finds that the river at that place is and was navigable.