The Waterford Electric Light, Heat and Power Company, Claimant, *v.* The State of New York.

(Court of Claims, December, 1921.)

Waters and water courses — lands bounded on rivers and streams above tidewater — rules of the English common law do not apply to lands bordering on the Hudson river and the Mohawk river — the title to the bed of the Hudson river and the bed of the Mohawk river is in the state of New York — franchises — compensation for appropriation of lands in accordance with the provisions of the Barge Canal Act — title to the bed of the Hudson river in the state of New York not divested by chapter 164 of the Laws of 1901.

The state of New York, pursuant to chapter 147 of the Laws of 1903, appropriated for the Champlain canal lands and flowage rights of claimant extending on both sides of the Hudson river above tidewater for a distance of about two and

one-half miles. The lands form part of original grants under English Colonial Patents. By chapter 164 of the Laws of 1901 claimant was "authorized to construct a dam across the Hudson river on the lands now owned by it or which it shall hereafter purchase or acquire * * * to forever maintain said dam and to flood back up said river so far as it owns or shall hereafter purchase or acquire the adjacent uplands * * * for the purpose of maintaining the pond formed by such dam; and any interests of the state in lands under the waters of said river covered by said dam or which may be flooded by the erection thereof or under any works which said company shall construct on or adjacent to said dam is hereby granted to said company, its successors and assigns." Claimant did not construct its dam and never obtained the consent of Congress to do so in accordance with the River and Harbor Act of March 3, 1899, but, relying upon said act of the legislature, it acquired a considerable part of its frontage on said river and made expenditures for the development of its property in reliance upon the provisions of said act. *Held,* that the rule of the English common law that grants which are bounded on rivers and streams above tidewater are presumed to extend to the middle of the stream has never been applied to colonial grants or state grants of lands bordering on the Hudson river and the Mohawk river, these rivers being an exception to the general rule because of their size, location and commercial importance, and the public use made of them from the earliest days as means of transportation and communication; that at the time of the enactment of chapter 164 of the Laws of 1901 the title to the bed of the river was in the state of New York and that the state's ownership was not divested and vested in claimant by the mere passage of said act. It was contemplated by said act that a dam should be erected and certain works constructed, in which event the title of the state to the lands under the waters of the river covered by said dam or flooded by its erection should pass to claimant. Said act, however, did grant to claimant a franchise which, having been accepted and acted upon, cannot be repealed, revoked or destroyed by the state appropriating it without compensation. The state having appropriated claimant's land in accordance with the provisions of the Barge Canal Act, claimant is entitled to compensation for its property taken for the public use, and for a judgment against the state in the amount of $250,000, with interest from June 30, 1913.

31

CLAIM to recover compensation for lands and flowage rights appropriated by the state.

Thomas O'Connor (George E. O'Connor, William S. Ostrander, John L. Wells and Charles A. Collin, of counsel), for claimant.

Charles D. Newton, attorney-general (Edward J. Mone, George L. Meade and John D. Monroe, deputy attorneys-general, of counsel), for the State of New York.

SMITH, J. This claim has been filed to recover from the state of New York compensation for lands and flowage rights permanently appropriated and destroyed by the state, pursuant to chapter 147, Laws of 1903, for the Champlain canal.

The lands and flowage rights appropriated and destroyed extend along both sides of the Hudson river above tidewater for a distance of approximately two and one-half miles, forming connected and uninterrupted stretches along both sides of the river, and between their northerly and southerly limits there is a substantial slope in the river bed.

The appropriated lands were originally parts of the lands granted by English Colonial Patents, viz., on the easterly or Rensselaer county side of the river, the patent from William and Mary to Tunison and Bradt, dated August 27, 1691, the patent from George II to David Abrahamson Schuyler and others, dated May 19, 1737, and the patent from George III to Isaac Sawyer and others, dated July 23, 1763, and, on the westerly or Saratoga county side of the river the Halfmoon Patent granted by the Duke of York to Philip Pieterson Schuyler and Goosen Garritson, dated October 13, 1665, a confirmatory patent between the same parties dated May 4, 1668, and a second con-

firmatory patent from Governor Dongan to Anthony Van Schaick, dated May 30, 1687.

Claimant claims that these patents, construed, as it claims they must be, according to the principles of the English common law, conveyed to the several patentees title to the bed of the Hudson river in front of the uplands granted by the patents, on each side of the thread of the stream, and that claimant as the successor to the titles of the patentees is the owner of the bed as well as the banks of the river and adjacent uplands within the limits of the appropriation.

Chapter 164 of the Laws of 1901, which was passed by a two-thirds vote in each house of the legislature and took effect on March 22, 1901, provides as follows:

" Waterford Electric Light, Heat and Power Company, its successors and assigns, are hereby authorized to construct a dam across the Hudson river on the lands now owned by it or which it shall hereafter purchase or acquire in the towns of Halfmoon, Saratoga county, and Schaghticoke, Rensselaer county, in such a manner as not to injuriously affect the water privilege of the Hudson river power transmission company, and such company is hereby authorized to forever maintain said dam and to flood back up said river so far as it owns or shall hereafter purchase or acquire the adjacent uplands or may have or shall hereafter purchase or acquire the rights of flowage thereon for the purpose of maintaining the pond formed by such dam; and any interests of the state in lands under the waters of said river covered by said dam or which may be flooded by the erection thereof or under any works which said company shall construct on or adjacent to said dam is hereby granted to said company, its successors and assigns."

A part of claimant's lands and flowage rights had been acquired by claimant prior to the enactment of

the act of 1901, but more than one-half of the front-age on the river, on both sides, had been in good faith acquired and other development expenditures made after the passage of the act and in reliance upon its provisions, although it did not construct its proposed dam.

It is claimed by claimant that the effect of the act of 1901 was to quitclaim to and vest in claimant all of the right, title and interest of the state, if it had any, to and in the lands under the waters of the river which might be covered by the waters impounded by its dam when erected, or at least to grant to claimant a franchise, which when accepted and acted upon was irrevocable without compensation, to construct and forever maintain a dam in the river.

Claimant, therefore, claims that its lands and flow-age rights on both sides of the river together with the lands under water which it claims to have owned as the successor of the original patentees thereof, or by quitclaim from the state, or both, constituted a very valuable potential water power site, worth at least $350,000, and that, if it be held that it did not own the lands under water, its uplands together with the franchise which it claims was granted by the act of 1901, constituted a property of no less value.

By a series of appropriations duly made pursuant to the provisions of chapter 147, Laws of 1903, the state has appropriated from claimant all of its uplands, and, from the owners of the fee thereof, the uplands over which claimant had acquired flowage, rights, and has constructed a stretch of the Champlain canal partly in the river adjacent to claimant's uplands and partly in and through uplands, flotation of sufficient depth at this location having been fur-nished by means of a dam in the river at substantially the place where claimant had contemplated locating

its dam, this state dam causing claimant's uplands
and the uplands over which claimant had acquired
flowage rights to be overflowed by the waters of the
river and canal, thus taking and destroying all of
claimant's property and rights in the lands appro-
priated.  As compensation for such lands and rights
so taken and destroyed claimant demands judgment
for $350,000, the value thereof, as claimed, as a water
power property.

The state contends that the bed of the river was
not granted by the patents under which claimant
claims title or by the act of 1901, that no franchise
or water rights, in fact, nothing more than a revoc-
able permit or license, was granted by the act of 1901,
that whatever the nature of claimant's rights in and
to the bed of the river, or to the use of the waters of
the river, they were subject and subservient to the
state's right to improve the navigation of the river,
a right which the state claims it was exercising in
building the Champlain canal, that claimant, having
failed to obtain the consent of Congress to erect its
dam, or the approval by the federal war department
of its plans therefor, in accordance with the River
and Harbor Act of March 3, 1899, was without suffi-
cient lawful power, authority and right to proceed
with its water power development, and that even
though claimant owned the bed of the river, or an
irrevocable franchise from the state by virtue of the
act of 1901, and was not precluded from proceeding
with its development by the fact of its failure to
obtain the consent to and approval of its project by
the federal authorities, yet its property and rights
were of inconsiderable value as a water power prop-
erty, and worth not more than $50,000.

The rule that a grant of land bounded by a non-
tidal stream is presumed to convey to the thread of

the stream is a rule of construction to be used in ascertaining the true intention of the parties. The question whether the conveyance carries title to the center of the stream depends upon the intent of the parties, to be gathered from the description of the premises read in connection with other parts of the deed or grant and by reference to the situation of the lands and the condition and relation of the parties to those and other lands in the vicinity. The presumption that the grantee takes to the center of the stream may be controlled by the terms of the conveyance as interpreted by the surrounding circumstances manifesting intention to the contrary. 9 C. J. 189; *Mott* v. *Mott,* 68 N. Y. 246; *Hall* v. *Whitehall Water Power Co., Ltd.,* 103 id. 129; *Graham* v. *Stern,* 168 id. 517. The intent of the parties may be shown by acts and conduct subsequent to the grant. *Watson* v. *City of New York,* 67 App. Div. 573.

None of the patents in question granted lands on both sides of the river, and, with respect to the description of their limits on the river side, none, in terms, specifically and unaided by the rule of the common law invoked by claimant, placed that boundary in the river bed. The language of each patent is, however, apt to fix the river boundary at the thread of the stream if the rule of the English common law, that grants which are bounded on river and streams above tide water are presumed to extend to the middle or thread of the stream, is applicable to it. That this is, and was at the time of these grants, a rule of the English common law is well understood, generally accepted, and needs the citation of no authorities. However, I think it is well settled that this rule was never applied to grants by colony or state of lands bordering the Hudson, which, like the Mohawk, has been considered an exception to the rule,

for the reason that as to it and the Mohawk, because of their size, location and commercial importance and the public use made of them from the earliest times as means of transportation and communication, reason and necessity demanded that they be excluded from the application of the rule, a demand in which all interested parties acquiesced.

Counsel on both sides have been most diligent in obtaining and placing before the court a mass of evidence as to the navigability and navigation of the upper Hudson and as to the manner in which its bed has been regarded, as to ownership and control by colony, state and riparian owners from the earliest times. Time and space will not permit a detailed analysis here of such evidence. It is sufficient to state that such evidence establishes the fact that from the earliest times down to about the time when the state undertook the work of canalizing the river, both colony and state have asserted, with the acquiescence of riparian owners, exclusive ownership, dominion and control of and over the bed of the upper Hudson.

Indeed the state's ownership of the bed of the river is distinctly recognized in several deeds in claimant's chain of title to parcels 2147, 4416 and 4417, in which " the line of ownership by the State of New York of, in and to the Hudson River and its bed " is mentioned in describing the easterly boundary of the lands conveyed by those deeds. Upon a state of facts and of history in no appreciable way differing from the facts and history with respect to the upper Hudson, it has been held that the Mohawk river was in its natural state a navigable river and that title to lands under its waters did not pass by patent grants of its banks (*People ex rel. Loomis* v. *Canal Appraisers,* 33 N. Y. 461; *Danes* v. *State of New York,* 219 id. 67), and that the Mohawk and Hudson were exceptions to

the application of the common law rule with regard to the construction of public grants of lands bordering nontidal waters. In recent Hudson river cases (*West Virginia Pulp & Paper Co.* v. *Peck,* 189 App. Div. 286, and *Thompson* v. *Fort Miller Pulp & Paper Co.,* 195 id. 271), the Appellate Division, third department, has held the Mohawk rule applicable to Hudson river grants.

It follows, that at the time of the enactment of chapter 164, Laws of 1901, the title to the river bed at the location in question was in the state of New York. Nor was that ownership divested from the state and vested in claimant by the mere passage of the act of 1901. It was not intended to have that effect as its plain terms indicate. It was contemplated that a dam should be erected and certain works constructed, whereupon, the title of the state to the lands under the waters of the river covered by the dam or flooded by its erection, or under any works constructed by claimant, should then pass into claimant's ownership. The erection of a dam and the construction of works was indispensable to the determination of what and how much lands were to pass by the grant.

The act was, however, by its plain terms intended to grant a franchise to claimant to erect and maintain a dam and other works and thereby to acquire title to the lands under water covered by the dam or flooded by means of it, and, having been passed by a two-thirds vote, is sufficient for that purpose. *First Construction Co.* v. *State of New York,* 221 N. Y. 295, 316, 317. Such a franchise, having been accepted and acted upon, cannot be repealed, revoked, or destroyed by appropriation, without compensation. *First Construction Co.* v. *State of New York, supra; People* v. *Hudson River Connecting R. R. Corp.,* 228 N. Y. 203. The franchise was to build and forever maintain a dam by

means of which the waters of the river might be flooded back up the river " so far as it (claimant) owns or shall hereafter purchase or acquire the adjacent uplands or may have or shall hereafter purchase or acquire the right of flowage thereon for the purpose of maintaining the pond formed by such dam."

The franchise was of necessity as well as by its terms to be used in connection with the lands and flowage rights which claimant owned or might acquire, and was so related to said lands and flowage rights as to be attributes thereof entitled to be considered as an element of value in fixing the amount of compensation to which claimant is entitled because of the appropriation and destruction of its lands and flowage rights.

It is contended that the act of 1901 is unconstitutional, in that, as it is urged, it is a private and local act and embraces more than one subject, whereas only one subject is expressed in its title, therefore, offending against section 16 of article III of the State Constitution.

The point is not well taken. While of course the act is a private act it embraces but one subject. The grant of lands covered by the waters to be flooded back by the dam was incidental to the subject of the construction of the dam. *Matter of Long Sault Development Co.* v. *Kennedy,* 158 App. Div. 398. No provision of the act was so foreign to its main purpose and subject as to mislead and deceive or tend to mislead and deceive the members of the legislature or the public. *Economic Power & Construction Co.* v. *City of Buffalo,* 195 N. Y. 298; *People ex rel. Olin* v. *Hennessy,* 206 id. 33.

Even though it be held that the act embraces two independent subjects, one of which is not expressed in

the title, and that it is unconstitutional as to the subject not expressed in the title, the subjects are separable, and the act is constitutional as to the subject which has been expressed in the title. *First Construction Co.* v. *State of New York,* 221 N. Y. 295, 320.

It is further urged by the state that whatever claimant's rights in or to the river bed or the use of the waters of the river might have been, the same were held subject and subservient to the state's right to improve the navigation of the river without compensating claimant for consequential damages resulting from the work of the improvement. This proposition, if conceded, will not defeat claimant's right to compensation for the value of its property taken by the state in the exercise of its right of eminent domain pursuant to the provisions of a statute which expressly provides that compensation shall be made for property so taken. Laws of 1903, chap. 147, § 4; *Lehigh Valley R. R. Co.* v. *Canal Board,* 204 N. Y. 471; *Oswego & Syracuse R. R. Co.* v. *State of New York,* 226 id. 351.

I find no difficulty in agreeing with the contention of the state that the work in which the state was engaged, in connection with which the several appropriations were made, was in a broad sense an improvement of the navigation of the river, none the less so because at points it was deemed advisable to cut into a portion of the river bank and construct a lock and a part of the canal channel partly or wholly shoreward of the highwater line. But in the carrying on of its project for the improvement of the navigation of the river, it was necessary, in addition, to erect a dam, the necessary effect of which was to permanently flood lands in the ownership of claimant, and to divert the waters of the river outside of the natural bed of the river, which it could not do without compensation

at common law, or under either the Federal or State Constitutions. U. S. Const. Amendment V; State Const. art. I, § 6. Furthermore section 84 of the Canal Law explicitly provides for the allowance and payment of the just and equitable damages sustained by owners of lands overflowed because of the erection of dams in connection with canal works, and chapter 147, Laws of 1903, provides for the appropriation of all lands, structures and waters necessary to be used for the improved canals and for making compensation therefor. Nor has the state attempted to take or destroy claimant's property or rights without compensation. Proceeding strictly in accordance with the provisions of the Barge Canal Act, the state officials have appropriated claimant's lands and lands in which it owned flowage rights, and pursuant to the provisions of that act claimant has come to this court to obtain, not consequential damages resulting from a work of navigation improvement which has not invaded its legal rights, but compensation for its property which has been taken from it for the public use, under a statute which declares that such compensation shall be rendered.

It is also urged by the state that claimant's franchise was not complete for the reason that it had not obtained consent of congress for the erection of its dam, or the approval by federal authority of its plans pursuant to the provisions of certain federal statutes. River & Harbor Act of March 3, 1899, chap. 425; General Dam Act of June 21, 1906, as amd. by act of June 23, 1910, chap. 360.

The acts referred to relate to " navigable waters of the United States " and the construction therein of obstructions to navigation, dams included, and forbid the commencement of such construction without first obtaining the prescribed consent and approval of

plans, and empower the imposition of certain conditions and restrictions in connection with the approval of plans.

It is claimed by claimant that the stretch of the river along which its lands and flowage rights lay was not "navigable waters of the United States" within the meaning of the federal statutes cited, for the reason that in that stretch of the river no navigation had been actually carried on for many years prior to the passage of the federal statutes, and that navigation over this stretch as a link in a continuous highway over which commerce might be carried on with other states or foreign countries in the customary modes in which such commerce is conducted by water had been rendered impossible by reason of the erection of several dams above and one below the location of claimant's lands. *The Daniel Ball,* 10 Wall. 557; *The Montello,* 11 id. 411.

Claimant further urges that the federal statutes were not intended to apply to this stretch of the river for the reason that the presence of reefs and rapids and the shallowness of the water in that stretch rendered it unsuitable and unfit for the uses of navigation as navigation was usually carried on at the time of the passage of the federal statutes, and that the construction of a dam in that stretch would constitute no obstruction to navigation and hence that this stretch was in no practical sense navigable waters of the United States.

This contention of claimant I think must fail. In legal character the Hudson river, as well above as below claimant's property, is a navigable river (*Palmer* v. *Mulligan,* 3 Caines, 307; *Harris* v. *Thompson,* 9 Barb. 350; *West Virginia Pulp & Paper Co.* v. *Peck,* 189 App. Div. 286), and there is no change in the legal character of a stretch in which there may be

reefs, rapids and shallow water. It is the nature of a stream in its entirety which determines its character as to navigability, and its character as so determined is not affected by the fact that there are stretches where navigation is difficult or indeed impossible. *Morgan* v. *King,* 35 N. Y. 454; *Matter of Comrs. of State Reservation,* 37 Hun, 537; *St. Anthony Falls Water Power Co.* v. *Water Comrs.,* 168 U. S. 349, 42 L. Ed. 497. The fact that artificial obstructions, capable of being abated by due exercise of the public authority, exist in a stream does not prevent the stream from being regarded as navigable in law, if, supposing them to be abated, it be navigable in fact in its natural state. Such a stream is within the application of the federal statutes under consideration. *Economy Light & Power Co.* v. *United States,* 256 U. S. 113.

However, the acts of congress do not limit the nature or extent of claimant's property rights, but prescribe conditions under which only they may be exercised. Such conditions must of course be complied with before a dam may lawfully be constructed, and the fact that the conditions had not been complied with prior to the appropriations is a fact to be taken into consideration in fixing the value of claimant's lands and flowage rights appropriated and destroyed. It is true that, because of dams in the river constructed by virtue of legislative authority, navigation in any practical way could not be carried on in the stretch of the river upon which claimant's lands fronted, and that for many years because of the dams and because of the construction and use of the Champlain canal no navigation there had been carried on, in addition to which the legislature had expressly authorized the construction of a dam at this location, yet the provisions of these federal statutes appreciably affected the market value of claimant's lands and rights. While in

the conditions and circumstances here existing, it may not fairly be assumed that congress would arbitrarily or capriciously withhold its consent to the construction of a dam, or that the secretary of war or chief of engineers would impose unreasonable or destructive conditions or stipulations, yet the fact that the power granted by the statutes exists and might be exercised in such manner as to molest, disturb or restrict the free enjoyment of the property would, with reason, be considered by a prospective purchaser as an element of influence calculated to reduce its market value.

We have considered these facts and conditions in fixing the value of claimant's lands and rights appropriated by the state and have reached the conclusion that the fair and reasonable value of such lands and rights at the time of the appropriation was $250,000.

The lands and flowage rights owned by claimant and appropriated by the state, together with the franchise granted to claimant by chapter 164, Laws of 1901, constituted one entire property whose most beneficial and valuable use was its employment as a whole for the development of water power. This entire property has been appropriated by the state by a series of appropriations, twenty-two in number, the first on March 17, 1910, and the last on June 30, 1913. It is not practicable to assign to each of the appropriated parcels a numerical proportion of the value of the entire property, for its value depended upon its use as an entirety. And while twenty-two several appropriations have been made by the state, their practical effect, so far as they affect value, is as of one single appropriation consummated on June 30, 1913, the date of the last appropriation. It does not appear that possession of any parcel was actually taken by the state prior to June 30, 1913, and only three appropriations were made prior to June 25, 1913. In the circum-

stances of this case, it seems just and reasonable to consider claimant's property as one parcel appropriated by one appropriation consummated on June 30, 1913, and that an award in the amount of $250,000, with interest from June 30, 1913, will fully compensate claimant for the property so appropriated.

Claimant is entitled to judgment herein in the amount of $250,000, with interest thereon from June 30, 1913.

ACKERSON, P. J., concurs.

Award accordingly.